UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION
www.flsb.uscourts.gov

In re:

Case No. 24-10601-EPK

DCG Boca, LLC, et. al.

(Jointly Administered)

Chapter 7

Debtor.

_______________________________/

**Motion to Quash Discovery Requests, or in the Alternative, to Stay Discovery and for a Protective Order**

Movants,[1] by and through their undersigned counsel and pursuant to Fed. R. Bankr. Pro. 2004, 9014, 9016, and Fed. R. Civ. Pro. 26, 45, hereby move this Bankruptcy Court for entry of an order that quashes, stays, or restricts the discovery propounded by AG 3 in these jointly-administered cases [DE # 35-53], or that grants a two-week extension of time for deponents to file more particularized protective motions, and in support thereof, state as follows:

Introduction

The jointly-administered debtors[2] filed these bankruptcy cases to effect an orderly liquidation and winddown of their affairs *after* they produced all of their

[1] The Movants are CLR Admin Services, LLC ("CLR"), DRM Marketing, LLC, Daniel Meeler, Darren Silverman, Michael Dazzo, Matthew Brenner, Erik Helbing, Esq., and Consumer Law Relief, LLC d/b/a Helbing Law Group, LLC ("Helbing Law").
[2] DCG Boca LLC, DCG Florida LLC, DCG New Jersey LLC, DCG New York LLC, DCG Staten Island LLC, and DCG Texas LLC, collectively are referred to as the "Debtors" or the "DCG Entities."

financial records to claimant Alternative Global Three, LLC ("AG 3"). The nineteen (19) subpoenas duces tecum that AG 3 has propounded in this bankruptcy case to "investigate" the affairs of long-defunct entities (i.e. the debtors) are the latest in a string of bad-faith tactics intended to harass and intimidate persons engaged in legitimate business operations and to divert attention from the bad acts of AG 3 principal Richard Cardinale and Robert Giardina.[3] For the reasons set forth below, this Court should enforce the limits, and defend the legitimate purposes, of discovery under Fed. R. Bankr. Pro. 2004 ("Rule 2004"), by quashing subpoenas propounded by AG 3, or in the alternative, by limiting the scope of permissible discovery or staying discovery pending conclusion of the Chapter 7 Trustee's investigation into whether there are any assets to distribute in these no-asset cases. Movants are not seeking entry of an order that impedes the Chapter 7 Trustee's investigation or that limits the legitimate inquiries of interested parties. Rather, Movants object to AG 3's usurpation of the Chapter 7 Trustee's role in these cases and use of Rule 2004 to (i)

[3] The Verified Petition for Dissolution of Alternative Global Management, LLC, a copy of which is here attached as **Exhibit "C,"** and the Second Amended Complaint in *Feingold and Dazzo v. Cardinale et al.*, Case No. 1:22-cv-20375-RKS/LMR, a copy of which is here attached as **Exhibit "D,"** set forth pertinent factual history. *See also FTC Action Results in Ban for Richmond Capital and Owner From Merchant Cash Advance and Debt Collection Industries and Return of More Than $2.7M to Consumers*, a copy of which is here attached as **Exhibit "E,"** (describing settlement of FTC action against Robert Giardina and RCG Advances, LLC, an entity co-owned by Messrs. Giardina and Cardinale, which action involved making violent threats to small businesses and their owners and submitting false documents to the court, and culminated in entry of an order banning Mr. Giardina and RCG Advances, LLC from, *inter alia*, participating in any debt collection activity); *see also* https://ag.ny.gov/press-release/2024/attorney-general-james-announces-historic-judgment-against-predatory-lender; *see also* https://www.ftc.gov/legal-library/browse/cases-proceedings/192-3252-rcg-advances-llc.

harass deponents who already have cooperated with, and been deposed by, AG 3, and (ii) obtain information about private business affairs that have nothing to do with the Debtors.

Background

All of the entities relevant to the Court's inquiry played a role in the debt-settlement industry and servicing of that industry, and they all had a shelf-life that has now expired or is soon expiring. Consumer Law Relief, LLC d/b/a Helbing Law Group, LLC ("Helbing Law"), and its principal, Erik Helbing, Esq., represent debtors in debt settlement and collection actions. The structure of debt-settlement arrangements is, generally, as follows: a client pays a fixed percentage of the total debt that they owe, and from that percentage, Helbing Law receives a fee and a settlement fund is built up in a trust account. Once the settlement fund reaches a critical mass, Helbing Law attempts to settle its clients' debts.

Substantial back-office operations are involved to (1) generate clients and (2) receive and process payments. Most clients pay their fixed percentage in regularly recurring installments, usually on a monthly or bi-monthly basis, rather than in a lump sum.

Helbing Law engaged CLR Admin Services, LLC, a company that operated in Boca Raton, Florida, to provide back-office support and administrative services and was the sole client of CLR Admin Services, LLC ("CLR"). Neither Mr. Helbing, nor Helbing Law, has any ownership interest in CLR. *See* Declaration of Erik Helbing, Esq., here attached as **Exhibit "A."**

CLR, in turn, processed payments for Helbing Law amongst other administrative services. One of the services that CLR rendered to Helbing Law is payment of referral fees to DRM, the marketing firm that referred clients to Helbing Law. The debtors, the DCG Entities, financed DRM's marketing services and received monies from DRM's operations. The chart here attached as **Exhibit "B"** illustrates those relationships.

Helbing Law notified CLR that, as of January 2022, Helbing Law would cease taking on new clients because of an unfavorable change in the law relevant to the debt-settlement industry. Helbing Law is winding down its business operations, and its principal, Erik Helbing, Esq., already works as a partner in a different law firm.

Given that Helbing Law was CLR's only client, CLR made arrangements to wind down its affairs as well, including the administration of Helbing Law's relationship with DRM, the provider of marketing services that generated clients for Helbing Law. Because marketing services were no longer needed, the DCG Entities' funding of those marketing services also was no longer needed. The DCG Entities had to wind down their affairs and made their final distributions in May 2022.

CLR remains operational solely for purposes of servicing the lone remaining clients of Helbing Law, i.e. clients who engaged Helbing Law prior to January 2022. Debt settlement services typically involve three- to five-year engagements, and therefore, CLR strives to remain operational only for so long as it takes for the existing engagements of Helbing Law to conclude.

In sum, as of January 2022, Helbing Law ceased taking on new business and began winding down. The administrative-service provider whose sole client was Helbing Law also began winding down. That service provider is CLR. The investment vehicles established to finance the marketing that generated clients for Helbing Law also began to wind down. Those investment vehicles are the DCG Entities (i.e. the Debtors in these jointly-administered cases).

Discovery to Date and AG 3's Proof of Claim

Although it is undisputed that the DCG Entities were supposed to wind down their affairs in or around January 2022,[4] and had not been operational since May 2022,[5] AG 3 principal Richard Cardinale attempted to revive the DCG Entities on November 17, 2022, by filing, via AG 3, a frivolous complaint against the defunct DCG Entities in the Circuit Court of the 11th Judicial Circuit in and for Miami-Dade County, Florida, Case No. 2022-022016-CA-01 ("*AG 3 v. DCG*"), and obtaining relief by default. AG 3 is purportedly a minority member of the DCG Entities,[6] and CLR is a majority member of the DCG Entities.

---

[4] The email correspondence here attached as **Exhibit "K"**, which was exchanged between Richard Cardinale, Robert Giardina, Michael Dazzo, and Darren Silverman, demonstrates that not only did AG 3 principals Richard Cardinale and Robert Giardina know that the DCG Entities needed to begin winding down in January 2022, but also that the AG 3 principals played an active role in winding down the affairs of the DCG Entities. Additional evidence of the AG 3 principals' knowledge and consent to the wind down of the DCG Entities is discussed later in this pleading.

[5] *See* Complaint in *AG 3 v. DCG*, para. 19 ("[T]he distributions ceased, at least as of May 23, 2022.").

[6] David Feingold and Michael Dazzo, two of the three ultimate beneficial Class A (voting) Members of Alternative Global Management, LLC, have asserted that AGM is the 100% owner of AG 3, a disregarded entity which filed a claim in each of the DCG Bankruptcy Cases. There is a dispute as to which entity owns the DCG

The complaint in *AG 3 v. DCG* (the "Complaint") asserts the following two causes of action against each of the DCG Entities: (1) breach of the operating agreement and (2) access to books and records. Those causes of action are relevant to this bankruptcy case because the proof of claim that AG 3 filed in this bankruptcy case, which has been assigned Claim No. 1, is comprised entirely of an unliquidated claim for damages based on the partial final judgment on liability for breach of the operating agreements that was entered in AG 3's favor by default.

In its Complaint, AG 3 alleges only the following two breaches of the DCG Entities' operating agreements: (1) failure to tender access to the DCG Entities' books and records and (2) failure to make any distributions from the DCG Entities to AG 3 since May 23, 2022. A true and correct copy of the Complaint is here attached as **Exhibit "F."**

In its *Motion for Joint Administration of Bankruptcy Cases* [DE #17], AG 3 alleges that (1) the DCG Entities are owed more than $30 million dollars (the "Tail") and (2) the DCG Entities are entitled to an interest in a new debt settlement venture (the "NewCo"). The Tail and an interest in NewCo are the assets that AG 3 alleges belong to the DCG Entities, and now, to their bankruptcy estates.

To explore the validity and amount of those allegedly missing assets for purposes of liquidating its partial default judgment, AG 3 took the following discovery before the DCG Entities filed these bankruptcy cases:

---

membership interest, AGM or AG 3. The DCG interests appear on the tax returns of AGM.

- On May 24, 2023, AG 3 deposed the accountant of the DCG Entities, Jared Birkholz, both in his individual capacity and as the records custodian for the Wolfson CPA Firm. In connection with that deposition, the accountant produced the following records to AG 3: bank statements, bank reconciliations from DCG QuickBooks, batch payments for monies that left the DCG Entities, including identities of payees and dates of payment, full access to DCG QuickBooks, including all disposition of assets and all financial statements for the DCG Entities, such as balance sheets, income statements, statements of cash flows, members' equity statements, a full schedule of expenses included within the income statements, the general ledger, and all journal entries, tax returns (state and federal), K-1 statements for the partners of DCG Entities, all internal work papers, and all emails with the accountant related to the DCG Entities. *See* Declaration of Jared Birkholz, here attached as **Exhibit "G."**

- DRM, the marketing firm that referred clients to Helbing Law and that was funded with investments from the DCG Entities, produced to AG 3 records of every transaction between DRM and the DCG Entities that occurred on or after AG 3's acquisition of a membership interest in the DCG Entities and also produced bank statements to substantiate each of those transactions. *See* Declaration of Matt Weiner, here attached as **Exhibit "H."**

- Michael Dazzo, in his individual capacity, sat for deposition by AG 3 on October 24, 2023. That deposition was the second time in some six months that Mr. Dazzo sat for deposition by AG 3 affiliates, having been deposed on April 11, 2023, in

the federal court action that Mr. Dazzo and David Feingold filed against Richard Cardinale and others in the Southern District of Florida, Case No. 1:22-cv-20375-RKS/LMR (the "First Federal Case"), and having produced over 800,000 documents to Richard Cardinale in that case, many of which were the records of the DCG Entities.[7] In his capacity as the DCG Entities' representative, Mr. Dazzo also testified at the 341 meeting of creditors in these jointly-administered bankruptcy cases.

Mr. Dazzo is a childhood friend of the AG 3 principal Richard Cardinale and also of Robert Giardina. The "DCG" in the DCG Entities stands for Dazzo, Cardinale, and Giardina. As set forth in the proof of claim filed by Mr. Feingold in this case, which claim is assigned Claim No. 3, Mr. Feingold and Mr. Dazzo own a controlling membership interest in the entity that wholly owns AG 3. For a description of the fallout between the parties, the structure of their business relationships, and the litigation between them, undersigned counsel respectfully refers the Court to the Verified Petition for Dissolution of Alternative Global Management LLC, a copy of which is here attached as **Exhibit "C**," and to the Second Amended Complaint filed in the First Federal Case, a copy of which is here attached as **Exhibit "D."**

---

[7] For context, AG 3's filing of a state-court case against defunct entities, *AG 3 v. DCG*, was a retaliatory move designed to obtain relief by default. Messrs. Feingold and Dazzo filed their federal court case against Richard Cardinale and others on February 5, 2022, Case No. 1:22-cv-20375-RKS/LMR. That federal court case is the first piece of litigation between the parties discussed herein. In response, some nine months later, on November 17, 2022, Richard Cardinale improperly caused AG 3 to file a frivolous complaint in Florida state court against the defunct DCG Entities and thereafter pursued default relief.

In addition to the production and depositions described above, by email dated February 27, 2023, CLR's counsel, Lorne Berkeley, Esq., gave AG 3's counsel, Jon Swergold, Esq., (1) login credentials for CRM, the software used by DRM to keep track of leads from DRM's marketing services and client referrals to Helbing Law, and (2) tax returns for the DCG Entities for the taxable years 2016-2021. Of course, all this production was unnecessary, and the need for it a farce, as AG 3's principal Richard Cardinale, and his long-time business partner and friend, Robert Giardina, actually operated the DCG Entities and always had access to all of the information that they claim they need.

Of utmost relevance to the relief requested in this Motion is the fact that AG 3 served duplicate discovery in this bankruptcy case. *See, e.g.,* Subpoenas Duces Tecum addressed to (i) the accountant, Jared Birkholz [#42], (ii) the accounting firm, Wolfson CPA Firm [DE #53], (iii) the DCG Entities [DE #35-40], (iv) Michael Dazzo [DE #44], (v) the marketing firm, DRM [DE #51], and (vi) DRM's principal, Matt Weiner [DE #41]. Seeing as AG 3 already deposed and obtained records from the persons and entities it is now serving with Rule 2004 subpoenas duces tecum, the harassing purpose of the AG 3 discovery requests is plain.

<u>Summary of Argument</u>

Much ado can be made about the *AG 3 v. DCG* <u>default</u> action, just as much ado can be made about the dozen other actions involving Messrs. Giardina and Cardinale, which actions are described in the Verified Petition for Dissolution of Alternative Global Management, LLC, a copy of which is here attached as **Exhibit "C."** This

Bankruptcy Court need not, and should not, involve itself in any of that outside litigation.

The heart of the matter is this: the DCG Entities indisputably must be liquidated. They come before this Bankruptcy Court having already made a complete production of their books and records to the only entity that is obstructing the Debtors' orderly wind down, purported minority-member AG 3, and having engaged a well-respected panel trustee, Maria Yip, to conduct an independent forensic audit. Pending the Chapter 7 Trustee, Nicole Testa Mehdipour's investigation into whether there are any assets to distribute, there is no cause to permit overblown third-party discovery. *See In re Calrissian LP*, Case No. 17-10356(KG), 2018 Bankr. LEXIS 2381 (Bankr. Del. Aug. 10, 2018) (staying Rule 2004 discovery propounded by a lender on the debtor's parent and a subpoena served by the lender on another creditor of the debtor pending the chapter 7 trustee's investigation into the debtor's affairs and decision regarding whether to issue a report of no distribution).

Applicable Standard

"When a party other than a trustee seeks through a Rule 2004 examination to duplicate the role of the trustee as set forth in section 704 of the Bankruptcy Code and other applicable law, that request smacks of harassment and, absent a showing to the contrary or special circumstances, must be denied." *In re LLC 1 07ch12487*, 608 B.R. 830, 836, n.11 (Bankr. N.D. Ill. 2019) (citing case law for the proposition that "[w]hile the scope of Rule 2004 examinations is broad, it is not limitless," and explaining why creditors should not be permitted to usurp the role of the chapter 7

trustee). AG 3 bears the burden of demonstrating good cause to pursue the discovery requests that it propounded on third parties under Rule 2004 because, for the reasons set forth below, those third parties object. 9 *Collier on Bankruptcy* ¶ 2004.01[6] (16th ed. 2024).

I. *Motion to Quash or to Stay all Discovery Requests Propounded by AG 3*

Although quashing *in toto* the discovery requests propounded by AG 3 in these jointly-administered cases, or staying such discovery requests pending conclusion of the Chapter 7 Trustee's investigation, may seem like extraordinary relief, such relief is both necessary to carry out the liquidation provisions of the Bankruptcy Code and appropriate in the no-asset phase of a liquidation case. The Debtors' schedules reveal that their sole assets are *de minimis* funds in their bank accounts. Although AG 3 believes the Debtors are entitled to recover a Tail valued at over $30 million and an interest in a NewCo, pending the Chapter 7 Trustee's validation of that belief, this is a no-asset case. Claims administration, and discovery related thereto, is futile at this juncture. *See Kipp Flores Architects LLC v. Mid Continent Cas. Co.*, 852 F.3d 405 (5th Cir. 2017) (no bankruptcy purpose is served by adjudicating claims in a no-asset chapter 7 case); *see also Enterprise Bank v. Eltech, Inc.* (*In re Eltech, Inc.*), 313 B.R. 659, 665 (Bankr. W.D. Pa. 2004) (neither elimination of a claim nor establishment of a claim will have any effect on a no-asset chapter 7 case).

The United States Bankruptcy Court for the District of Delaware reached the same conclusion when faced with discovery requests propounded by a lender in a corporate liquidation. *In re Clarissian LP*, 2018 Bankr. LEXIS 2381 (Bankr. Del. Aug.

10, 2018). The lender believed that the debtor may have claims against the debtor's parent, amongst other assets. Therefore, the lender propounded Rule 2004 discovery requests on the debtor's parent and on a creditor with whom the debtor was settling. At the time, the debtor had no on-going business operations, no employees, and minimal assets, only prospective claims. The bankruptcy court stayed the lender's Rule 2004 discovery requests pending the chapter 7 trustee's decision on whether to issue a Report of No Distribution.

The United States Bankruptcy Court for the Northern District of Illinois went one step further, finding that a creditor should not even be permitted to compel production of a corporate debtor's tax return when a chapter 7 trustee is in place who can compel production of same. *In re LLC 1 07ch12487*, 608 B.R. 830, 836 (Bankr. N.D. Ill. 2019). That bankruptcy court described the permissible scope of discovery in a corporate chapter 7 case as follows:

> While the scope of Rule 2004 examinations is broad, *In re Wilcher*, 56 B.R. 428, 433 (Bankr. N.D. 1985) (Martin, J.), it is not limitless, *see, e.g., In re Kelton*, 389 B.R. 812, 819-20 (Bankr. S.D. Ga. 2008) (discussing various limitations), and the relief thereunder is discretionary. *See* Fed. R. Bankr. P. 2004(a) (the court "may order the examination"). One accepted limitation is that a Rule 2004 examination may not be used to harass a debtor. *In re Cambridge Analytica, LLC*, 600 B.R. 750, 752 (Bankr. S.D.N.Y. 2019) (citing *In re Mittco*, *Inc.*, 44 B.R. 35, 36 (Bankr. E.D. Wis. 1984)). When a party other than a trustee seeks through a Rule 2004 examination to duplicate the role of the trustee as set forth in section 704 of the Bankruptcy Code and other applicable law, that request smacks of harassment and, absent a showing to the contrary or special circumstances, must be denied.

*Id.* at n. 11.

AG 3 undoubtedly will remark that CLR propounded its own discovery requests in this case, but that comparison is hollow. CLR issued only three Rule 2004 discovery requests [DE #57, 69, 70], and those requests are addressed only to the entity claiming that there are assets in these jointly-administered cases, AG 3, and to the member that caused AG 3 to make such claims, Richard Cardinale, and his colleague, Robert Giardina. Moreover, to date, CLR has not received document production from, or deposed, either Richard Cardinale or Robert Giardina, and CLR does not even have access to the bank accounts of the DCG Entities because only Messrs. Giardina and Cardinale controlled the Debtors' bank accounts.[8] This is a far cry from AG 3's service of requests to produce the same documents that already have been produced, to sit for depositions regarding subjects about which the deponents already have been deposed, and for a fishing expedition into the private affairs of third parties who have never done business with, let alone even heard of, the Debtors, such as Helbing Law and its principal, Erik Helbing. In any event, CLR is agreeable to staying even CLR's discovery requests pending conclusion of the Chapter 7 Trustee's investigation.

II. *Motion for a Protective Order and Reservation of Rights*

---

[8] The DCG Entities banked at Empire Bank because Messrs. Giardina and Cardinale had a relationship with that bank. As set forth in the FTC litigation involving Messrs. Giardina and Cardinale and their merchant-cash-advance business, Messrs. Giardina and Cardinale used Empire Bank for their debt-collection business. *See Fleetwood Servs., LLC v. Ram Capital Funding, LLC,* 20-cv-5120 (LJL), 2022 U.S. Dist. LEXIS 100837, at *12, 62 (S.D.N.Y. June 6, 2022). In these bankruptcy proceedings, Debtors' counsel must subpoena the Debtors' bank records because CLR-members Darren Silverman, Matthew Brenner, Daniel Meeler, and Michael Dazzo do not have access to those bank accounts. Because the Debtors are insolvent, CLR advanced the fees required to subpoena the Debtors' bank records.

If the Court rejects Movants' request to quash, or to stay, all discovery requests propounded by AG 3 in these jointly-administered cases, Movants respectfully request that the Court (i) require AG 3 to demonstrate good cause for conducting Rule 2004 discovery, (ii) limit the scope of the appropriate subjects for Rule 2004 discovery, (iii) require any depositions taken by AG 3 to occur via video conference, (iv) limit the scope of information that the Chapter 7 Trustee may divulge to AG 3, (v) sequence discovery such that AG 3's, and Messrs. Cardinale's and Giardina's responses and depositions, are due prior to the date on which AG 3 may take depositions or the date on which any of the discovery propounded by AG 3 comes due, and (vi) permit all interested parties to file individual or group motions for a protective order or motions to quash within fourteen days of the issuance of a court order denying CLR's request to stay, or to quash, all discovery requests propounded by AG 3. Judicial resources would be wasted were each target of an AG 3 subpoena to submit individual requests for protection if the Court is inclined to grant the plenary relief requested herein.

"Although a Rule 2004 examination may be ordered ex-parte, once a motion to quash a subpoena is filed, the examiner bears the burden of proving that good cause exists for taking the requested discovery." *In re Marks*, Case No. 22-50080, 2022 Bankr. LEXIS 3590, at *5 (Bankr. S.D. Oh. Dec. 13, 2022) (quoting *Matter of Wilcher*, 56 B.R. 428, 434 (Bankr. N.D. Ill. 1985) and citing *In re Millenium Lab Holdings II, LLC,* 562 B.R. 614, 627 (Bankr. D. Del. 2016) and *In re Dinubilo*, 177 B.R. 932, 943 (E.D. Cal. 1993). Having had possession of, or access to, the Debtors' books and records since the Debtors' inception, and having frivolously caused production of same

over a year ago in the *AG 3 v. DCG* case, AG 3 should substantiate a need for its witch hunt. What records does AG 3 have to show that it is entitled to an interest in a NewCo or that a $30 million Tail is missing? And how are the nineteen discovery requests that AG 3 propounded in these bankruptcy cases designed to prove the existence of, and AG 3's right to an interest in, those assets?

If the Court is disinclined to quash, or stay, all discovery requests propounded by AG 3, granting an extension of time for all interested parties to file individual motions for protective order or to quash is critical because the subpoenas issued by AG 3 to third parties seek private financial information that is wholly unrelated to the Debtors' affairs. For instance, the payments to and from Helbing Law, and communications with the principals of CLR, are amongst the subject matters for examination in the exhibit attached to all of AG 3's subpoenas. As set forth in Mr. Helbing's Declaration, Helbing Law has nothing to do with the Debtors, making an inquisition into the private structure of Helbing Law's agreements with its clients and with its service providers far beyond the appropriate scope of a Rule 2004 examination in these cases. The same is true regarding communications with the principals of CLR. The accountants who rendered services to the DCG Entities may have communicated with the principals of CLR about the principals' private financials affairs or about businesses that have nothing to do with the Debtors. Were third parties to produce documents responsive to, and to testify regarding subjects set forth in, the AG 3 subpoenas, they would trample the private interests of other third parties.

Undersigned counsel represents CLR and its principals, DRM Marketing, LLC, and Helbing Law and its principal, and on their behalf, objects to production of documents, or the elicitation of any testimony, pertaining to the private affairs of CLR, its principals, Helbing Law, its principal, or DRM Marketing, LLC.

Additionally, given the dissembling, threats, and misconduct by Messrs. Giardina and Cardinale, this Bankruptcy Court should order what other courts involved with Messrs. Giardina and Cardinale have ordered: all depositions in which AG 3 intends to participate must occur by video conference. *See* Order Granting Plaintiff's Motion for Order Concerning Timing and Sequence of Discovery Under Fed. R. Civ. P. 26(d)(3) (the "Sequencing Order"), a copy of which is here attached as **Exhibit "I,"** at p.4. In three actions involving RCG Advances, LLC, another business owned by Messrs. Cardinale and Giardina, this time in the merchant-cash-advance space, plaintiffs and interested parties describe threats of physical violence.[9] Those plaintiffs include the Federal Trade Commission and the Attorney General of the State of New York.

Although Movants intend to fully cooperate with the Chapter 7 Trustee, in light of the history here, extra protections are warranted. Movants respectfully request that, notwithstanding 11 U.S.C. § 704(a)(7), the Court enter an order that bars the Chapter 7 Trustee from sharing any information with AG 3 or with Richard

---

[9] *See Fleetwood Servs., LLC v. Ram Capital Funding, LLC,* 20-cv-5120 (LJL), 2022 U.S. Dist. LEXIS 100837, at *16-18 (S.D.N.Y. June 6, 2022) (describing RCG and Giardina's *modus operandi* by reference to two other actions, one filed by the New York Attorney General, and one by the Federal Trade Commission, in which, like the *Fleetwood* action, individuals threatened merchants with physical violence).

Cardinale or Robert Giardina if such information is elicited from a third party and is not directly related to the Debtors' financial affairs. For instance, if any entity or individual voluntarily discloses to the Chapter 7 Trustee information about unrelated persons, companies, or business ventures that are the subject of scurrilous claims by AG 3, then Movants respectfully request that the Chapter 7 Trustee keep the private financial information of unrelated businesses private pending the Chapter 7 Trustee's satisfaction that such businesses have nothing to do with the DCG Entities.

Finally, Movants respectfully request that the Court enter an order that requires AG 3, Mr. Cardinale, and Mr. Giardina to respond to the discovery requests served upon them and to sit for deposition prior to allowing AG 3 to take discovery. As expressed by the U.S. District Court for the Southern District of Florida, Mr. Cardinale and his cohorts "should be required to give their deposition testimony based on their own documentation and recollection of the facts" due to "a concern that Defendants may tailor their testimony." *See* Sequencing Order, here attached as **Exhibit "I."** AG 3 and its principals should establish a good-faith basis for representing to this Bankruptcy Court and others that there is a $30 million Tail missing and an interest in a NewCo due and owing without cobbling together a distortion of facts from overblown third-party discovery. AG 3 is already in possession of all of the information that it reasonably might require. It is time for AG 3 to establish good cause to proceed.

III. *Meet and Confer and State Court Discovery*

On May 10, 2024, Movants' counsel and AG 3's counsel spoke via telephone in an attempt to reach agreement on the relief requested in this Motion. The parties fundamentally disagree regarding the scope of production and testimony that was ordered by the State Court in the *AG 3 v. DCG* action and regarding the appropriate scope of discovery under Rule 2004 in this no-asset stage of a chapter 7 liquidation. The discovery ordered by the State Court is more narrow than the discovery that has been propounded by AG 3 in this bankruptcy case. For instance, CLR-member Matthew Brenner was never ordered to sit for deposition, yet AG 3 has subpoenaed his testimony in these bankruptcy cases [DE #43].

Movants recognize that the scope of discovery permissible under Rule 2004 is broader than the scope permissible outside of bankruptcy, and in fact, welcomes a broad-spectrum investigation into the Debtors' affairs. However, even Rule 2004 has its limits. Demanding a duplicate production of documents and a repeat deposition from persons and entities, like the Debtors' former accountant, Jared Birkholz, and the Wolfson CPA Firm, who already have been fully deposed and who already turned over all of their records pertaining to the Debtors, is overkill even under Rule 2004.

Discovery into private financial affairs unrelated to the Debtors also exceeds the bounds of Rule 2004. For instance, although the State Court entered a <u>default</u> judgment as to the DCG Entities' liability for breach of their operating agreements, there has not been a finding in any court that the DCG Entities are entitled to, or were deprived of an interest in, a NewCo. For that reason, AG 3 could not (in *AG 3 v. DCG*), and should not (in these bankruptcy cases), take an invasive look into the

affairs of every entity that is published on Sunbiz.org as having an affiliation with a CLR principal or a DRM principal. AG 3 must first establish a foundation. *See, for example,* Dazzo Dep. 163:13-174:16 (Magistrate Judge Alan Fine sustains objection to AG 3's counsel's inquiry into the identify of NewCo, which is referred to as "Company X"), here attached as **Exhibit "J."**

Conclusion

If there are assets to recover in these jointly-administered bankruptcy cases, no one stands to gain more than majority-member CLR. Movants intend to fully cooperate with the Chapter 7 Trustee's investigation of the Debtors' affairs, but object to AG 3's usurpation of the Chapter 7 Trustee's role in these cases and use of Rule 2004 to (i) harass deponents who already have cooperated with, and who have already been deposed by, AG 3, and (ii) obtain information about private business affairs that have nothing to do with the Debtors.

**WHEREFORE**, Movants respectfully request that the Court enter an order that (1) grants this Motion, (2) quashes, without prejudice, all discovery requests propounded by AG 3 in these jointly-administered cases, or stays all such discovery requests pending the Chapter 7 Trustee's decision regarding whether there are any assets in these cases, or enters a protective order that provides the relief set forth in this Motion and that grants all interested parties fourteen days to move to quash, or for protection from, discovery requests that are addressed to them by AG 3, and (3) for such other and further relief as this Court may deem just and proper.

Dated: May 13, 2024

Respectfully submitted,

*/s/ Corrine Aftimos*
Corrine Aftimos, Esq.
Florida Bar No. 0045272
caftimos@wernicklaw.com

*/s/Aaron A. Wernick*
Aaron A. Wernick, Esq.
Florida Bar No. 14059
awernick@wernicklaw.com

WERNICK LAW, PLLC
*Counsel for the Movants*
2255 Glades Road, Ste 324A
Boca Raton, FL 33431
(561)961-0922