IN THE CIRCUIT COURT OF THE
11TH JUDICIAL CIRCUIT IN AND
FOR MIAMI-DADE COUNTY, FLORIDA

CASE NO. 2022-022016-CA-01

ALTERNATIVE GLOBAL THREE, LLC, a Delaware limited liability company,

Plaintiff,

vs.

DCG STATEN ISLAND, LLC, a Florida limited liability company, DCG BOCA, LLC, a Florida limited liability company, DCG NEW JERSEY, LLC, a Florida limited liability company, DCG NEW YORK, LLC, a Florida limited liability company, DCG FLORIDA, LLC, a Florida limited liability company, DCG TEXAS, LLC, a Florida limited liability company,

Defendants.
_______________________________/

Via Zoom
Tuesday, October 24, 2023
10:05 a.m. - 4:45 p.m.

VIDEOTAPED DEPOSITION OF MICHAEL DAZZO

Taken before Mary Ann Collier, a Court Reporter and Notary Public for the State of Florida at Large, pursuant to Notice of Taking Deposition filed in the above cause.

Q. Let's go to 69. Okay. This is the last one here that I'm going to talk to you about for right now. This is April 21st of 2022, and this is from you to Todd Sanders. Who is Todd Sanders?
A. Todd Sanders is a friend of mine.
Q. And what does he do?
A. He works at Broad Street.
Q. How is he involved here?
A. He might have been investing in another venture that we have.
Q. And who's Darren? Darren Silverman?
A. I assume Darren Silverman.
Q. Okay. So is there another debt settlement company that Mr. Silverman is involved with?
A. Yes, there is. A different model, since that model doesn't exist anymore.
Q. What's the name of that company?
A. Again, you guys asked me this last time. I don't think it's relevant here.
Q. Well, I'm going to ask you the questions and I'm going to ask you to just identify the name.
A. Not going to do it.
MR. SWERGOLD: Judge.
MR. BERKELEY: This was an issue that was raised in the federal case. Again, you know,

there are several other cases involving the same parties, Judge, and my client files one case and they've had approximately 13 cases filed against them, all in an effort to start rulings by other courts and it's gamesmanship.

So, with all due respect, in accordance with the federal court ruling, which is the first filed ruling, where my client was not obligated to answer this question according to the magistrate judge, we are going to assert that same here. Because, again, this is nothing more than gamesmanship, trying to cert a federal court's magistrate judge's ruling.

So, with all due respect, we would take this issue to, presumably, Judge Walsh and/or the magistrate judge in the federal case.

MR. SWERGOLD: Judge, there's no such limitation.

SPECIAL MAGISTRATE FINE: Before you argue, let me just hear the question back, please, and I will try to put it in context, because you're taking Mr. Dazzo's deposition as a non-party --

MR. SWERGOLD: I understand.

SPECIAL MAGISTRATE FINE: -- in the currently pending case.

(The question referred to was read by the reporter as above recorded.)

SPECIAL MAGISTRATE FINE: So the question has to do with identifying the name of a debt settlement service company that's not a party -- well, I don't know if it's a party or not until it's named, to this case.

MR. BERKELEY: Yes, judge. It is a subsequent company that has nothing to do with these particular parties. It's a separate and distinct unrelated business.

And the pattern throughout the litigation is opposing counsel and his client get the name of my clients' businesses, they then sue the businesses, issue subpoenas to them to disrupt my clients' business income. And they are now competitors to Mr. Cardinale, who is opposing counsel's client.

Hence, this question being asked in the federal court matter and not being answered in the federal court matter, as per the magistrate judge's findings, because she recognizes the pattern.

So, again, my client is a not a party to this case. He's not here to divulge information about

other businesses that are unrelated, especially when a federal magistrate judge has not required him to do so.

MR. SWERGOLD: This is a totally different case. My client is Alternative Global Three. I'm entitled to trace funds. I asked the name of the company. I haven't asked anything further.

You know, first he says that -- he said it in the other case, which, frankly, I don't know how good or bad his memory is about what he was asked and what he wasn't, if he tells me the name and it lines up with something in the other case, that's going to be the end of it. If he tells me a different company, then that's a different story and we'll have to figure it out from there.

But then I thought I heard counsel arguing that a magistrate said he didn't have to answer it in a different case. So which one is it? He either answered it in the other one or he didn't.

At the end of the day, I represent Alternative Global Three. This case is about Alternative Global Three. This case is about Alternative Global Three's right to trace the money and what happened.

We've just been through a whole series of

messages which show that the business was increasing significantly toward the end of 2021 and then, suddenly, shut down in 2022 and the money dried up.

I want to know where it went. I'm entitled to find out if there's another entity that's been started and the business has been shifted over there.

You had 5,000 customers. They didn't just all go away overnight and they didn't all just go away without having to pay any fees.

THE WITNESS: We have 13,000 customers.

SPECIAL MAGISTRATE FINE: Hold on, everybody. Hold on. I may have misunderstood, but what I heard the witness say is not that he answered it in the other case, but he was asked it in the other case.

MR. SWERGOLD: No. All the more reason that we're entitled to it, because Judge Walsh ruled that we're entitled to ask whatever we want, with the only limitation that you expressly read onto the record earlier, judge, which says we can't ask anything that was asked in the other case.

It doesn't say you can't ask anything that was not asked in the other case, because the

judge ruled X, Y or Z. That's not what the ruling was by Judge Walsh. That's who I'm appearing in front of and that's who this case is in front of.

SPECIAL MAGISTRATE FINE: Hold on. Let me ask you to give me a little bit more background about this case. This is not a proceeding supplementary. Right?

MR. SWERGOLD: It is heading in that direction, and I made that very clear on the record multiple times with Judge Walsh.

MR. BERKELEY: It is not right now.

SPECIAL MAGISTRATE FINE: Hold on. Let me inquire of plaintiff's counsel here.

As I understand it, the plaintiff has acquired a default against the corporate defendants, and this case is proceeding in order to determine the amount of damages and that's all that this case is at this time. Is that right or wrong?

MR. SWERGOLD: You are correct in that. And the only way that I can determine the damages, because heretofore I have been unable to obtain information pertaining to the integration and involvement of each of these entities, which we

have now learned today how tied together and closely knit they were.

And if money has moved and these entities have put assets into a different business, that would absolutely account for my damage and allow me to calculate my damage. And I can't go get that information without knowing, you know, where to look.

SPECIAL MAGISTRATE FINE: If you have the name, what is it that you would be doing?

MR. SWERGOLD: Well, it depends what the name is. If it's a name that already -- that has been covered previously, that's going to be the end of the questioning.

We have spent now all this time discussing this. I could have gotten the name and that would have been the end of it. But it may well be that I have to serve a subpoena on that company to obtain information that would relate to its interactions with CLR and DRM and how all of this mess that we're trying to unwind in this web of companies, what happened. Where did the money go?

Because the issue here is, as you will see -- we will see shortly, there's -- it's 33 -- $33

million tail in fees are anticipated. They're gone. We never got them. And so that's what we're trying to track down and trace and we're entitled to that.

SPECIAL MAGISTRATE FINE: Your client's interest in the defendant entities was what percentage?

MR. SWERGOLD: Your Honor, off the top of my head, I don't know, but I don't think it makes a darn bit of difference whether it's one percent or 100 percent. We're entitled to the information, because we did have an interest in those entities. We are a plaintiff in a lawsuit.

We have -- by virtue of the default, there's a finding of liability here already and an acknowledgment by the defendants, whether they litigate it or not, as to the allegations in the complaint, which include, but are not limited to, that this was a thriving business and then it all just disappeared. So I'm entitled to pursue that.

SPECIAL MAGISTRATE FINE: Okay. So in order to avoid doing potential harm to something that would be confidential, what I'm going to do is require the witness to answer the questions

without identifying a company.

Well, so that there's no mistake, you will call it Company X for the moment, but I need you to put with your attorney what Company X is, Mr. Dazzo, but it doesn't go on the record for the moment, but this information, you know, both sides have a right to appeal any decisions I make to Judge Walsh.

So, you know, this one, you can pursue the line of questioning that you were going to pursue without knowing the identity for the time being.

MR. BERKELEY: Okay. Understanding what you ruled, just so you know, you can look on page 196 of the federal court deposition when the question is asked "What debt settlement company are you currently invested in?"

I mean, I don't even know if that's relevant. And then the question is asked, "Just the name." "I'd rather not give it." "You're going to refuse not to answer that question?"

SPECIAL MAGISTRATE FINE: So here's the thing. I've already ruled and, you know, you don't want to snatch defeat out of the jaws of victory, Mr. Berkeley.

So you don't have -- the witness does not

have to identify the company, but there may be questions that could be relevant to this case about that company. And so for the time being, I'm just saying the name of the company doesn't go on the record, but plaintiff's counsel can inquire.

MR. SWERGOLD: Your Honor, respectfully, I think we have an issue here. We didn't ask him does he have an ownership interest in the -- in the -- we didn't ask him if he has an ownership interest in the debt settlement company. I didn't ask that. That's not what the question was and that's not what I'm pursuing.

I'm pursuing the flow of funds, not the ownership of the company. I think there's a pretty big distinction between those two features. I would ask you to think about that and consider whether this is an appropriate question.

I know it's easy to lose the context with all the back and forth.

SPECIAL MAGISTRATE FINE: So, you haven't convinced me to change my mind, so just go ahead with the rest of your questions and, you know, if something happens to change my mind, I'll let you

know.

BY MR. SWERGOLD:

Q. Did any deals from or clients of CLR, DRM, Helbing or the DCGs get transferred to Company X?

A. Absolutely not.

Q. What is Debt USA?

A. So Debt USA --

MR. BERKELEY: Objection. You already asked that in the federal court matter. I will give you the page number.

MR. SWERGOLD: I will move on.

BY MR. SWERGOLD:

Q. What is Second Chance Initiative?

A. No idea. Never heard of it.

Q. I'm sorry. Second Chance Advocates.

A. Never heard of it.

Q. You have no affiliation with them?

A. No, not that I know of.

Q. Is Company X Debt USA or a different company?

A. Different company. I want to answer what Debt USA is, if you guys don't mind.

Q. We don't need to at this point.

MR. SWERGOLD: Let's go off the record, please. It's 3:33.

THE VIDEOGRAPHER: Going off the record at

3:33 p.m.

(Thereupon, a brief recess was taken, after which the following proceedings were had:)

THE VIDEOGRAPHER: Going back on the record at 3:43 p.m.

BY MR. SWERGOLD:

Q. All right. Let's get started.

Mr. Dazzo, did any fees owing to DRM, CLR or DCG get transferred to Company X?

A. No.

Q. Did any assets belonging to DRM, CLR, DCG get transferred to Company X?

A. No.

Q. Does Company X operate out of any of the same offices where DCG, DRM or CLR have ever operated?

A. No.

Q. Who's email is Admin@debtleader.com?

A. I believe the operators could be Brenner and Silverman and Meeler. They could all have access to it.

Q. All the same ones?

A. Correct.

Q. All the same emails. They don't have separate emails?

A. They might, but they might all have access to